Trapp, &c. v. Fidelity National Bank, &c.

CASE 76—PETITION EQUITY—JUNE 16.

# Trapp, &c. v. Fidelity National Bank, &c,

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. CORPORATIONS—AUTHORITY OF OFFICERS—ESTOPPEL.—Where the treasurer of a corporation by long usage is recognized and held out by the board of directors and the president thereof, as the officer whose duty it is to sign the obligations of the corporation, the corporation is estopped to deny the authority of its treasurer to sign notes and checks, if they were in good faith signed for the benefit of the corporation, and founded upon a valuable consideration passing to it.

2. CORPORATIONS—FRAUD OF OFFICERS THEREOF.—Where the general manager of a bank is also the president and principal stockholder in another corporation, and procures from the bank on the paper of the other corporation money for his own use and benefit with the knowledge of the other officers of the bank that it was to be so used by him, the corporation upon whose paper the money was raised will not be held liable to the bank.

C. L. RAISON, JR., FOR APPELLANTS.

1. The charter and by-laws of the Swift Iron & Steel Works prohibited the treasurer from executing the notes and checks in controversy. Harper was vice-president of the bank, and president of Swift's Iron & Steel Works, and he knew the provisions and restrictions of the charter and by-laws of the Iron & Steel Works,

and his knowledge was the knowledge of the bank and notice to it of the want of authority. Chemical National Bank v. Wagner, Assignee, 14 Ky., Law Rept., 520; Drake v. Hudson R. R. Co., 7 Bar., 508; Cummins v. Webster, 14 Me., 192; Flint v. Powers, 99 Mass., 668; Adrience v. Roome, 52 Bar., 299; Dabney v. Stevens. 48 How. (N. Y.), 341; Hunter v. Mutual Ins. Co., 21 La. Ann., 13; Dosier v. Freeman, 47 Miss., 647; Payne v. Potter, 9 Iowa; Beach v. Vanderwater, 1 Sanford, 265; Baxter v. Lamount, 60 Ill., 257; and the fact that it was the custom of the treasurer to execute the obligations of the corporation does not change the rule, N. Y., Fireman's Ins. Co. v. Ely, 2 Cowans, 678; Commonwealth v. Ohio R. R. Co., 1 Grant's Penn. Cases 320, Morrowetz on Corporations, sec. 526; Martin v. Webb, 110 U. S., 7.

2. No consideration passed or was received by the Swift Iron & Steel Works on account of the alleged notes and checks asserted against the estate of that corporation. They were fraudulent and fictitious and represented no *bona fide* transaction.

3. The greater portion if not all money paid out on these notes and checks by the bank was used by Harper and lost by him in a wheat speculation, and he being the president of the bank knew the purposes for which the money was being used, and his knowledge was knowledge of the bank, and notice to it of the fraud that was being perpetrated upon the Swift Iron & Steel Works and its stockholders and creditors, and the bank is thereby estopped from recovery in this action.

4. The receiver having asserted against the directors of the Fidelity Bank the same claims herein asserted against the Swift Iron & Steel works, and having compromised and settled with the said directors, can not now maintain this suit.

5. As a general rule in equity where one of two innocent parties is caused to suffer by reason of the fraud of a third party, he who puts the third party in a position to, and makes it possible for him to commit the fraud, must bear the loss and suffer the consequences. Creath's Adm'r. v. Simms, 5 U. S., 192; Harrington v. Bigelow, 11 Paige, 349; Atwood v. Fisk, 160 Mass., 363; Mattox v. Highstone, 39 Ind., 95.

6. There was no ratification upon the part of the directors of the Swift Iron & Steel Works of the acts and conduct of the treasurer in executing and delivering the notes and checks in controversy. There can not be any ratification of a void act; and the party to be bound by the ratification of an unauthorized act must have full knowledge of the material facts affecting his interest in the transaction. Beacham on Agency, secs. 114, 115,

Trapp, &c. v. Fidelity National Bank, &c.

132; Field v. Small, 17 Col., 386, (30 Pacific Rept., 1034); Cannon Rivers Mfg. Association v. Rogers, 53 N. W. 759; Murray v. Nelson Co., 9 N. E. Rept., 634.

C. J. HELM, JAMES C. WRIGHT, GEORGE WASHINGTON AND NELSON & DESHA ON SAME SIDE.

W. H. MACKOY AND JOHN W. HERRON FOR APPELLEES.

1. Matthews, the treasurer of the ·Swift Iron & Steel Works, had full authority to execute the checks and notes and sign its name thereto, and was recognized and held out as the proper officer so to do in all transactions of the company. Carter v. Mitchell, Assignee, 94 Ky., 261; National Exchange Bank v. Wilgus' Ex'r, 15 Ky. Law Rept., 763.

2. The Swift Iron & Steel Works is estopped from denying the authority of its treasurer to execute the obligations in contro-versy, having recognized and held him out as the proper officer to execute such obligations, and having received the benefit of his acts. Meacham on Agency, sec. 118; Lathrop v. Commercial Bank, 8 Dana, 115; Lester v. Webb, 15 Allen (Mass.) 34; Holmes v. Board of Trade, 81 Mo., 143; Scott v. Railroad Co., 86 N. Y., 200; Story on Agency, secs. 95 and 260; Edwards v. Thomas, 66 Mo., 468; Reed v. Hibbard, 6 Wis., 175; Evans v. Wells, .22 Wend., 324; McLaughlin v. Detroit R. R. Co., 8 Mich., 100; Middleton v. Kansas City R. R. Co., 62 Mo., 579.

3. Unauthorized acts of an agent may be given the force of pre-·cedent authority by their ratification. Chouteau v. Allen, 70 Mo., 290; Walker v. Detroit, R. R. Co., 47 Mich., 338; Dunn v. Hartford, R. R. Co., 43 Conn., 434.

4. A principal who neglects promptly to disavow an act of his agent, by which he has transcended his authority, makes the act his own. Greene's Brice's Ultra Vires, 562-4; Kelsey v. National Bank, 69 Penn., 426; Bredin v. Duberry; 14 Serg. & R., 30; Gordon v. Preston, 1 Watts, &c., 387; Bank of Penn. v. Reed, 1 Watts, &c., 101; Indianapolis Rolling Mill v. St. L. R. R. Co., 120 U. S., 256; Beach on Corporations, secs. 187, 194, 195, 189; Pittsburg, &c. R. R. Co. v. Keokuk Bridge Co., 131 U. S., 371.

5. Where a corporation has power to enter into a contract and the contract has been fully performed by the other party, and the corporation has had full benefit thereof, it will not be allowed to show that the power was not properly exercised. Ft. Worth Co. v. Bridge Co., 151 U. S., 294; Meacham on Agency, secs. 111, 112, 167, 148; Forsythe v. Banta, 5 Bush, 547; Bate's

Ex'rs. v. Best's Ex'rs., 13 B. M., 215; Hitchcock v. City of Galveston, 96 U. S., (6 Otto) 340; Creswell v. Lannahan, 101 U. S., (11 Otto) 347; Hyatt v. Clark, 118 N. Y., 563; Union Gold Mining Co. v. National Bank, 96 U. S., 640; Shotwell v. Frost, 122 Mass., 184; Story on Agency, secs. 253-4; Vianna v. Barkley, 3 Cow.. (N. Y.) 281; Hazard v. Speer, 4 Keyes, (N. Y.) 469; Cairnes v. Bleeker, 12 Johnson, (N. Y.) 300; School District v. Aetna Ins. Co., 62 Me., 330; Alexander v. Jones, 64 Iowa, 207; Heyn v. O'Hagen, 60 Mich., 150; 2 Greenleaf on Evidence, 297; Parsons on Contracts, 44 and 49.

6. The usages and practices of a corporation may be resorted to for the purpose of showing the authority of its officers. Mahony Mining Co. v. Bank, 104 U. S., 192; Ins. Co. v. Ins. Co., 19 How., 318; Merchants' Nat. Bank, &c. v. State Nat. Bank, 10 Wall., 604; Phillips v. Campbell, 43 N. Y., 271; Beach on Corporations, .186.

7. In the transactions between the Fidelity Bank and the Swift Iron & Steel Works, the interests of Harper being antagonistic to those of the bank, it is not chargeable with his knowledge in regard to such transactions. 2 Pomeroy's Eq. Jur., sec. 675; Barnes v. Trenton Gas Light Co., 27 N. J. Eq., 33; DeKay v. Hagensack Water Co., 38 N. J. Eq., 158; Bank v. Christopher, 40 N. J. Law, 435; Stephenson v. Bay City, 26 Mich., 44; Winchester v. B. & S. R. R. Co., 4 Md., 232; Seneca Co. v. Mears, 5 Denio, 329; Turril v. Grant Bank of Mobile, 12 Ala., 502; Wickersham v. Chicago Zinc Co., 19 Kas., 481; Thompson v. Cartwright, 33 Bevan, 174; Crane v. Crane, 15 Ch. Div., 639; Lyon v. Bank of Kentucky, 5 J. J. M., 560; Davis v. Davis, 20 Federal Rept., 699; Kenton v. Green, 3 Mylne & Keen, 699.

8. Where a common officer of two corporations borrows money from one to be used by the other for a purpose or in a manner which is illegal or in the furtherance of a contract which is *ultra vires,* the corporation from which the money is borrowed will not be charged with knowledge of the facts. In re Marseilles Co., L. R., 7 Ch. App, 161; In re Contract Corporation, L. R., 8 Eq. 14; Gale v. Lewis, 9 Q. B., 730; O'Mahony Mining Co. v. Bank of Cal., 104 U. S., 192.

W. H. MACKOY AND JOHN W. HERRON IN PETITION FOR REHEARING.

1. The instruments upon which this suit is founded import a consideration, and when filed, make it a *prima facie* case for appellees. Upon the production of these instruments the burden of the

proof rested upon the appellant to show that they were without consideration, and this they have not done. It is shown beyond a doubt that $231,100 of the indebtedness of the Swift Iron & Steel Works to the Fidelity Bank was contracted several months before the commencement of the wheat deal.

2. In obtaining the money on the paper of the Swift Iron & Steel Works by fictitious means Harper was not representing the bank in the transaction, but he was on one side of it representing himself and the Swift Iron & Steel Works, and the other officers of the bank not implicated in the transaction were on the other side representing the bank. Innerarity v. Merchants' Bank, 139 Mass., 322; Atlantic Mills v. Indian Orchard Mills, 147 Mass., 268.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

March 1, 1886, the Fidelity National Bank of Cincinnati, O., was organized and began business on a capital of $1,000,-000, E. L. Harper being vice-president and general manager, but June 21, 1887, it was by the comptroller of currency found to be insolvent, and David Armstrong appointed receiver.

March 1, 1886, the Swift Iron and Steel Works was, and for several years had been, a corporation doing business in Newport, Ky., E. L. Harper being president and principal stockholder, but June 21, 1887, it was also found to be insolvent, and made an assignment for benefit of creditors, Adam Wagner being appointed trustee, who brought the present action to settle the estate and distribute assets among creditors.

And now this is an appeal by John Trapp and others, general creditors of that corporation, from a judgment rendered against it in favor of David Armstrong, receiver, for about $581,942.20.

The demands for which appellee asked and obtained said

judgment consist of nine checks, purporting to have been, between May 23 and June 18, 1887, drawn by Swift Iron and Steel Works on S. Kuhn & Son, German National Bank, and First National Bank, all of Cincinnati, in favor of the Fidelity National, aggregating $418,290, and of call loans and discounts, making the entire indebtedness alleged to have been thus created by Swift Iron and Steel Works between March 1, 1886, when the Fidelity Bank began business, and June 21, 1887, when it collapsed, $611,920, though two of the items, amounting to $29,730, were abandoned by appellee. It appears that all the checks and largest amount of notes sued on were signed only by J. H. Matthews, treasurer of the corporation, and the master commissioner, believing the evidences of indebtedness so signed were within ruling of this court, in the cases of Chemical National Bank of New York v, Wagner, assignee, and First National Bank of New York v. Same, 14 Ky. Law Rep., 570, disallowed all except $26,590.10 thereof. But the lower court sustained exceptions to his report and rendered judgment for the full amount claimed.

The controversy in the two cases mentioned was about six promissory notes of $25,000 each, executed about April or May, 1887, in the name of Swift Iron and Steel Works, signed by Matthews, as treasurer, made payable to himself individually, and endorsed by him to E. L. Harper, who, as vice-president of Fidelity Bank, endorsed two of them to the Chemical National Bank and four to First National Bank of New York as collateral security for money loaned to the Fidelity Bank.

In those two cases, heard together, this court held that as

Matthews, the treasurer, was, according to a by-law of the corporation, without authority to issue the notes the two banks could not recover on them against Wagner, assignee, without showing he was authorized by a superior officer or board of directors to so issue and sign them, which they failed to do.

This case differs from those two, not only in other features not necessary to particularize, but essentially in that it has been here expressly shown the treasurer by long usage was recognized and held out by the board of directors and president as the officer whose duty it was to sign all obligations of the corporation. So as this record stands, Swift Iron and Steel Works is *prima facie* estopped to deny authority of Matthews, its treasurer, to issue and sign the checks and notes in question, and it does not matter that E. L. Harper was at the time an officer of both the corporation and banking association, if the board of directors and president of the former did in fact, as they had the power, disuse and treat the by-laws as obsolete. Therefore, if the alleged indebtedness was created *bona fide* for the benefit of Swift Iron and Steel Works, and be founded on a valuable consideration passing to it from the Fidelity Bank, the right of appellee to the judgment appealed from is manifest. But without referring to the evidence in detail, or attempting to accurately separate those items of the alleged indebtedness that are valid and just, if any are, from those not so, we have become convinced that much the largest part, if not all, was in an unwarranted manner and by fraudulent devices of Harper created for his own individual benefit, and to promote and sustain a gigantic wheat speculation in Chicago

that ultimately brought about his own financial downfall, as also that of both the Fidelity Bank and Swift Iron and Steel Works.

No doubt the sum of $418,290 was between May 23d and June 18, 1887, a period of less than one month, actually paid out on the nine checks by the Fidelity Bank, and done ostensibly on the credit of Swift Iron and Steel Works. But it is fully shown that corporation did not at the time have any funds with either Kuhn & Son, the German National or First National Bank of Cincinnati, and the checks were never intended to be presented to or paid by them, being a fictitious device of Harper to raise money to use in the wheat deal that was then in a critical condition, and at the same time deceive the public as to the financial condition of the corporation and the bank.

Counsel, however, argue that the Swift Iron and Steel Works was then in an insolvent condition, and the large amount of indebtedness to the Fidelity Bank alleged to have been created from March 1, 1886, to June 18, 1887, was done by Harper to sustain it in business. But it is not at all probable Harper would for that single purpose have caused the Fidelity Bank, of which he was also an officer and stockholder, to advance so much money that he knew it would in the end lose. Besides, the transaction with the Chemical National Bank and First National Bank of New York, by which the Swift Iron and Steel Works was recklessly involved to the extent of $150,000, shows that without particular regard for either the corporation, of which he was president, or the bank, of which he was vice-president, Harper was determined to raise money by all means, legiti-

mate or otherwise, to aid in carrying on his wheat specula-
tion.

It is too plain for doubt that the money, or largest part
thereof, now claimed as a just and subsisting demand
against the Swift Iron and Steel Works, was used by Harper
for his own benefit, and was procured from the Fidelity
Bank, with knowledge of the other officers that it was to
be so used.  In fact appellee, shortly after being appointed
receiver, instituted an action against the president and
directors of the Fidelity Bank to recover the enormous sum
of $2,500,000, including the amount alleged to have been
loaned and advanced to the Swift Iron and Steel Works,
which he distinctly alleged had, with the knowledge or
through gross negligence of the defendants, been fraudu-
lently obtained and used by Harper in the wheat specula-
tion.  In our opinion, not only was the money now claimed
to be due from the Swift Iron and Steel Works obtained
from the Fidelity Bank for the purpose of being used, and
actually used, by Harper for his individual benefit, but his
scheme to thus defraud and wrong that corporation must
be held to have been carried out with the knowledge and
connivance of the other officers of the Fidelity Bank, and
consequently appellee must look to Harper and not to the
Swift Iron and Steel Works for recovery back of the money
so obtained and used.

The judgment is, therefore, reversed and cause remanded
for reference to the master commissioner, with directions to
ascertain and report what, if any, part of the money sued
for was actually used and appropriated for benefit of the

Swift Iron and Steel Works, and to disallow all not shown to have been so appropriated and used.

The court delivered the following response to petition for rehearing December 11, 1897:

One of the grounds of appellee's petition for rehearing and eventual dismissal of the appeal for want of jurisdiction of this court is that, though the judgment of April 24, 1894, was treated by both court and counsel as properly before us for revision, there was, as since discovered, really no appeal prayed for or granted by the lower court. But though the original transcript did not show the fact, it does appear from additional and correct copy of the record, since brought up, that an appeal from that judgment was both prayed for and granted by the lower court to appellants, unsecured creditors of the Swift Iron and Steel Works.

There is no new or sufficient reason offered for a change of a decided opinion that the judgment in favor of the appellee was for a very much larger sum than he is entitled to recover; and the petition for rehearing is, therefore, overruled.

Counsel for appellants ask the opinion and mandate be so modified that, instead of directing a reference to the master commissioner to ascertain and report what, if any, part of the money sued for was actually appropriated and used for benefit of the Swift Iron and Steel Works, the lower court be required to disallow and dismiss the entire demand outright.

Of the whole amount claimed $26,000 appears to have been reported by the commissioner as just, and, without exception on part of appellants, allowed by the court, and,

therefore, can not be disturbed. Though satisfied more than really owing was adjudged to appellee, we did not undertake to ascertain and determine the exact amount. But in order to end the litigation, already unnecessarily protracted, we think those items of the alleged indebtedness palpably and unquestionably unjust should be here indicated.

In view of the failing condition of the Swift Iron and Steel Co., culminating in actual failure June 21, 1887, which we are satisfied was known to other officers of the Fidelity National Bank besides Harper, it is altogether unreasonable the enormous sum of $418,292 was in good faith loaned to it between May 23, 1887, and June 18, 1887, and when we consider the bank was at the same time being drained of its resources by Harper, and was on the same day closed, it is simply incredible that sum was loaned to or the corporation got the benefit of any part of it. To us it is too plain for discussion that Harper, with knowledge and connivance of other officers of the bank, got and appropriated the entire sum to prop up his wheat speculation, then in a precarious condition, and that about the same fatal day of June 21, 1887, ended in disaster and ruin to himself and the various business associations he was connected with and controlled. To extent at least of said sum of $418,292, we think the items of the alleged indebtedness of the Swift Iron and Steel Works to Fidelity National Bank should be rejected and disallowed without further reference to or proof by the commissioner. As to the residue of the claim, additional proof may be taken if necessary.

The opinion and mandate are modified to extent here indicated.